UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re

       Louise Chin                                Chapter  7
       aka Louise Reddington,               Case No. 1-11-46968-jf

                  Debtor.

--------------------------------------------------------X

Debra Kramer, *as Trustee of the estate of*
*Louise Chin aka Louise Reddington*,

                  Plaintiff,              Adv. Pro. No. 1-12-01231-jf

      -against-

Lawrence Chin,

                  Defendant.
--------------------------------------------------------X


## DECISION AND ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT


**APPEARANCES:**

Katherine Geraci, Esq.                   J. Logan Rappaport, Esq.
Fred S. Kantrow, Esq.                  Pryor & Mandelup, L.L.P.
The Law Offices of Avrum J. Rosen, PLLC     675 Old Country Road
38 New Street                        Westbury, NY 11590
Huntington, NY 11743                *Attorney for Defendant*
*Attorney for Plaintiff*

**Jerome Feller**
**United States Bankruptcy Judge**

In July 2007, Louise Chin ("Louise" or "Debtor") transferred her 50 percent interest in a house located at 52-52 71st Street, Maspeth, New York ("Property" or "Premises") to her younger brother Lawrence ("Defendant") in exchange for $10 ("Transfer"). The Chapter 7 trustee ("Trustee") commenced this adversary proceeding to avoid the Transfer and recover the Debtor's interest in the Property or its purported value of $282,500. Defendant seeks summary judgment pursuant to Fed. R. Civ. P. 56, made applicable here by Fed. R. Bankr. P. 7056. He contends the Trustee lacks evidence to support an essential element of each of her claims. The Trustee argues the motion must be denied because there are genuine disputes of material fact as to these elements. However, the Trustee fails to support her claims with probative evidence. For the reasons stated herein, Defendant's motion is granted.

## I.

The Debtor filed her petition on August 12, 2011. Case No. 11-46968 (ECF No. 1). She was unemployed at the time, listed the Property as her address, scheduled over $170,000 in unsecured claims, and did not disclose the Transfer. The Trustee examined the Debtor at the meeting of creditors under 11 U.S.C. § 341(a) on September 16, 2011. A month later, the Debtor received a discharge. *Id.* (ECF No. 10). However, a continuance of the meeting of creditors was scheduled for December 16, and on May 22, 2012, the Clerk of Court issued a Notice of Discovery of Assets. *Id.* (ECF No. 12). In June, the Court authorized the Trustee to examine the Debtor under Fed. R. Bankr. P. 2004 ("Rule 2004 Order"). *Id.* (ECF No. 17).

The Trustee commenced this proceeding on August 1, 2012.[1] The complaint seeks recovery based on: (i) 11 U.S.C. §§ 544, 550, and 551 utilizing (a) the constructive fraud provisions of New York Debtor and Creditor Law ("DCL"), namely § 273 (Claim One), § 274

---

[1] That same day, the Trustee also commenced an adversary proceeding against the Debtor to revoke her discharge on grounds that she failed to disclose her interest in the Property in her bankruptcy case and/or comply with the Rule 2004 Order. Adv. Pro. No. 12-01233.

(Claim Four), and § 275 (Claim Six) and (b) the DCL's actual fraud provision, § 276 (Claim Seven); and (ii) common law unjust enrichment (Claim Nine). ECF No. 1.[2] On August 23, 2012, Defendant filed an answer to the complaint. ECF No. 4. On October 11, the Court entered a joint scheduling order, which allowed three months for discovery. ECF No. 7.

On February 4, 2013, Defendant filed his motion. ECF No. 10. The motion is accompanied by a statement pursuant to E.D.N.Y. LBR 7056-1 of material facts not in dispute (ECF No. 10-1); a memorandum of law (ECF No. 11); an affidavit of Bik Ching Chin, Louise and Lawrence's mother ("Ms. Chin"), attaching nine exhibits (ECF No. 12); and an affidavit of the Debtor, attaching 17 exhibits (ECF No. 13). The Trustee filed a memorandum of law in opposition, a counterstatement of material facts in dispute, and four exhibits. ECF No. 16. Defendant filed an amended E.D.N.Y. LBR 7056-1 statement (ECF No. 18), and later filed a reply memorandum (ECF No. 20), an additional affidavit by the Debtor (ECF No. 22), and affidavits by Defendant (ECF No. 21); Tony Chang, an attorney who represented Robert Gee, Louise's first husband (ECF No. 23); Robert Reddington, Louise's second, and now estranged, husband (ECF No. 24); and Connie Tom, the owner of a jewelry store, attaching a valuation of Louise's jewelry (ECF No. 25). On March 5, 2013, the Court held a hearing on Defendant's motion, at which the parties appeared by counsel and were heard, and reserved decision.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v.*

---

[2] Claims Two, Three, and Five seek recovery of the monetary value of the Transfer, once avoided, under DCL § 278 and 11 U.S.C. § 550. Claim Eight seeks attorneys' fees under DCL § 276-a.

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("*Matsushita*") (internal quotation marks omitted). Thus, the issue before the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, [defendant's] burden will be satisfied if he can point to an absence of evidence to support an essential element of [plaintiff's] claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). If this burden is met, plaintiff, in order to defeat the motion, "must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Geonaga*, 51 F.3d at 18. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court may not make credibility determinations or weight conflicting evidence. Although plaintiff's evidentiary burden is not substantial, it nonetheless requires "significantly probative" evidence and "merely colorable" evidence will not suffice. *Id.* at 249; *see Matsushita*, 475 U.S. at 586 (stating plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts"). Plaintiff "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible" (*Geonaga*, 51 F.3d at 18), and "denials in legal memorandum or [at] oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist" (*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks omitted)).

Defendant submitted numerous affidavits and exhibits in support of the motion. In contrast, the Trustee submitted: (i) Debtor's petition; (ii) the complaint; (iii) a 2007 tax assessment relating to the Property; and (iv) a statement relating to an account held by the

Debtor. ECF Nos. 16-2; 16-3; 16-4; 16-5. While the Trustee relies on documents submitted by Defendant relating to the acquisition of the Property, its transfer in 2005, and the July 2007 Transfer, she does not submit any deposition testimony, affidavits, appraisals, account statements, or other evidence. Viewed in the light most favorable to the Trustee, her evidence demonstrates the transfer of the Property for what appears to be inadequate consideration, but says virtually nothing about Louise's solvency or state of mind at the time of the Transfer, or whether Lawrence was benefited at Louise's expense such that it would be inequitable for Lawrence to retain the transferred property.[3] Where, as here, defendant meets his burden on summary judgment, plaintiff must either "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted), *cert. denied*, 540 U.S. 811 (2003). The Trustee has not met her burden.

## III.

A July 8, 1988 contract of sale lists Louise and her parents, Quong Chong Chin and Ms. Chin (the "Chins"), as the purchasers of the Property, as does an indenture, closing statement, settlement statement, and mortgage. ECF Nos. 12-1; 12-2; 12-3; 12-4; 12-5. Several instruments record a November 2005 transfer of the Chins' interest in the Property to Defendant, with Louise retaining her interest. ECF No. 12-8. A New York City property assessment roll for the years 2007-2008, lists Louise as the owner of the Property as of the "taxable status date" of January 5, 2007. ECF No. 16-4. Additional documents evidence the July 2007 Transfer of the Debtor's interest in the Property to Defendant for $10. ECF No. 12-9.

The affidavits submitted by Defendant place these documents in a particular context.

---

[3] As far as the Court can determine, the Trustee did nothing during the three-month discovery period except, perhaps, collect some documents from Defendant. The Trustee's sluggish prosecution of this case also manifests itself in her memorandum of law which apparently was recycled from other proceedings, unlike the present one, involving claims brought under 11 U.S.C. § 548(a) (*see, e.g.*, ECF No. 16 at 14), and fails to address directly Defendant's arguments regarding unjust enrichment.

There are two main components to the story they tell: (i) the initial need for Louise to be involved in the purchase of the Property and (ii) the Chins' intention to transfer the Property to their oldest male child in keeping with Chinese tradition. ECF Nos. 12 ¶¶ 3-5; 13 ¶¶ 5-6; 21 ¶¶ 5-6. Prior to the purchase of the Property, the Chins, Louise, Lawrence, and a third child, Lucinda, lived in Woodside, New York. ECF No. 12 ¶ 2. In 1988, Louise was 23, Lawrence was 16, and Lucinda just 13. *Id.* The Chins worked in a laundry, and "were not sufficiently creditworthy to secure a mortgage to help finance the purchase of the Premises." *Id.* ¶ 3. Ms. Chin avers:

> [W]e needed to rely on Louise to secure a mortgage since she already had established a credit history. She also had been employed by IBM for over a year. In order for Citibank to provide us with a mortgage, Louise's name needed to be on the deed for the Premises. Despite the fact that Louise's name was also going to be on the deed and mortgage, my husband and I told Louise that the Premises would ultimately be transferred to Lawrence . . . .

*Id.* The Debtor's affidavit supports this arrangement. ECF No. 13 ¶¶ 4-5.

Ms. Chin explains that the $263,000 purchase price was paid through two checks drawn on separate bank accounts, one for $70,000 and the other for $36,200, and a $130,000 mortgage loan from Citibank. ECF No. 12 ¶ 4. She states the checks came from the Chins, not Louise, and submits bank records to support this claim. *Id.*; ECF No. 12-6. While Louise issued checks for $293, $174.10, and $1,450 at the closing (ECF No. 12-3), she and Ms. Chin both state that the Chins provided the funds for the payments. ECF Nos. 12 ¶ 4; 13 ¶ 4.[4] In fact, Louise denies ever having paid expenses associated with the Property. ECF No. 13 ¶ 7.

According to Ms. Chin, "Chinese custom [ ] dictates that the eldest son shall obtain the family's real property because he is expected to take care of his parents in their old age." ECF

---

[4] Attached to Ms. Chin's affidavit is a note, addressed to a relative, dated February 3, 2001. ECF No. 12-7. It reads, in part, "you know I bought the apartment 52-52 on a mortgage obtained in the name of LOUISE but actually completely paid from my own pocket, and LOUISE did not pay a penny for it. My intention is for my son [] to have the apartment." *Id.* Ms. Chin explains that she wrote the note because she and her husband were travelling to Canada and wanted to ensure their intentions were honored in case "something tragic befell" them. ECF No. 12 ¶ 7.

No. 12 ¶ 5. Because the property was destined for Lawrence, "[b]y deed, dated November 4, 2005," the Chins "transferred the Premises to Lawrence, although Louise remained on the deed as a precaution." *Id.* ¶ 8. The reason for this caution was that Ms. Chin and Defendant's wife, Irene, "had been arguing regularly" and therefore the Chins were reluctant to transfer the Property to Lawrence in full. *Id.* Even so, Defendant states that since the November 2005 transfer, he has made all payments related to the Property. ECF No. 21 ¶ 8. To support this contention, Defendant submits: (i) a letter from conEdison stating he "began using service on November 7, 2005" (*id.* Exh. A); (ii) a letter from an insurance carrier indicating he began paying premiums on September 26, 2006 (*id.* Exh. B); and (iii) a statement from National Grid reflecting an account was opened in his name on November 7, 2005 (ECF No. 27).

Ms. Chin explains that "[b]y July 2007, our relationship with [Irene] had improved to the point where my husband and I were comfortable transferring the Premises to Lawrence alone." ECF No. 12 ¶ 9. Thus, the Debtor transferred the Property to Defendant at her parents' direction. *Id.*; ECF No. 13 ¶ 9 ("[A]fter years of repeatedly telling me that Lawrence would ultimately own the Premises, [my parents] had me sign a document . . . whereby the Premises was put into Lawrence's name exclusively"). The Debtor also avers that "[w]hile it is true that I did not receive any consideration from Lawrence with respect to this transfer, I was not transferring to him anything of value as I only [ ] had a bare legal interest to the Premises and never considered myself an owner of the Premises." ECF No. 13 ¶ 9.[5]

## IV.

The Court first considers Defendant's motion as to Claim Nine, for unjust enrichment. When a trustee brings a state law tort claim, he stands in the shoes of the debtor. To prevail on a

---

[5] According to several affidavits, Louise lived at the Property from 1988 until 1992, when she married her first husband, Mr. Gee; moved back in 2003 after she and Mr. Gee separated; moved out in 2005 to live with her second husband, Mr. Reddington; and returned in 2010 after she separated from him. ECF Nos. 12 ¶ 5; 13 ¶ 6; 24 ¶ 2.

claim for unjust enrichment under New York law, plaintiff must demonstrate "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). Said another way, plaintiff must prove (i) defendant was enriched and (ii) such enrichment was unjust. *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984).

Defendant argues he was not unjustly enriched by the Transfer because Louise only had bare legal title to the Property, and therefore he "could not have been enriched at Louise's expense." ECF No. 11 at 19. In his amended E.D.N.Y. LBR 7056-1 statement Defendant supports this contention by reference to the Debtor's affidavit. ECF No. 18 ¶ 23 (citing ECF No. 13 ¶ 18). Defendant contends that as the Trustee lacks any contrary evidence, there is no genuine dispute of fact, and his motion should be granted as to the Trustee's claim for unjust enrichment.

The Trustee's counterstatement states that she "disagrees" that there are no genuine disputes of material fact because "[t]he Debtor transferred away a 50% interest in the Premises for no consideration; the Defendant then owned the Premises, which had no mortgage, in fee." ECF No. 16-1 ¶ 37. The Trustee asserts that:

> [W]hen property in the possession of a debtor is alleged to be held
> in trust by the debtor for a nondebtor, and therefore not estate
> property under [11 U.S.C. §] 541, the burden rests upon the entity
> seeking to exclude the property from the estate to establish the
> existence of the claimed fiduciary relationship.

ECF No. 16 at 19.[6] Based on this predicate, the Trustee argues (i) "the issue of the 'true' ownership of the Premises is a question of fact"; (ii) Defendant's "proof" concerning "true" ownership of the Property is deficient; and thus (iii) summary judgment should be denied

---

[6] Other than noting on page three of her memorandum of law that there is a dispute of fact concerning "whether the no-consideration transfer caused the Defendant to be unjustly enriched at the Debtor's expense," the Trustee's brief appears to be focused entirely on the fraudulent transfer claims. ECF No. 16 at 3.

because there is a genuine dispute of material fact as to whether the Debtor was "holding the Premises in 'trust' for" Defendant. *Id.* at 21.

However, resolution of Defendant's motion does not require a finding as to property of the estate; and this case does not turn on New York's trust law. *Cf. Geltzer v. Balgobin (In re Balgobin)*, 490 B.R. 13 (Bankr. E.D.N.Y. 2013) (discussing trust law in connection with a turnover proceeding). Rather, the issue is whether a trier of fact could find for the Trustee on her claim for unjust enrichment based on the evidence submitted. As one court explains:

> [T]o prove an unjust enrichment claim more is required than simply showing that one party received a benefit (*see,* Restatement [Second] of Restitution § 1, comment c), that the enrichment must be such that in equity and good conscience its retention would be unjust (*see, Paramount Film Distr. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695, *mod. on other grounds* 31 N.Y.2d 678, 336 N.Y.S.2d 911, 288 N.E.2d 811, *cert. denied* 414 U.S. 829, 94 S.Ct. 57, 38 L.Ed.2d 64), and to determine whether there has indeed been unjust enrichment the inquiry must focus on the "human setting involved" (*McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328), not merely upon the transaction in isolation (*id.*).

*Mayer v. Bishop*, 158 A.D.2d 878, 880, 551 N.Y.S.2d 673, 675 (3d Dep't), *appeal denied*, 559 N.Y.S.2d 983, 559 N.E.2d 667 (1990); *see Songbird Jet Ltd.*, 581 F. Supp. at 926 ("An indispensable ingredient" of a claim for unjust enrichment "is that as between the two parties involved there must be an injustice"). As noted, Louise avers that the Property was destined for Lawrence, had no value to her, and the Transfer was made at her parents' request. She may or may not be right, as a matter of law, about "ownership," but there is no dispute as to her belief or the context of the Transfer. The Trustee's evidence consists of documentation of the purchase and transfers of the Property and the 2007 tax assessment. This evidence says absolutely nothing about the "human setting involved" or other factors going to the equities of the Transfer. But these issues relate directly to the essential element of whether the Transfer was at the Debtor's

expense. Based on this evidence, no reasonable trier of fact could find in favor of the Trustee on her claim for unjust enrichment. Accordingly, Defendant's motion is granted as to Claim Nine.

### V.

The Court next considers Defendant's motion as to the claims based on constructive fraudulent conveyance. The Bankruptcy Code authorizes a trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). Under the DCL, a transfer is constructively fraudulent if it is made without "fair consideration" and one of the following conditions is met:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005).[7] Each condition must be demonstrated by a preponderance of the evidence.

To prevail on a claim under DCL § 273, plaintiff must demonstrate either that the transferor was insolvent at the time of the transfer or that she was rendered insolvent thereby. *See, e.g.*, *Stokes Coal Co. v. Garguilo*, 255 A.D. 281, 283, 7 N.Y.S.2d 414, 415 (1st Dep't 1938), *aff'd*, 20 N.E.2d 562 (1939). When "the trustee meets his burden as to lack of fair consideration, [ ] it is presumed that the transfer made the debtor insolvent." *Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005). Thus, if lack of fair consideration has

---

[7] "Fair consideration" is given for property or an obligation:

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272.

been established, a defendant must provide evidence of solvency. If he does, plaintiff must prove insolvency. *See Borriello*, 329 B.R. at 373; Fed. R. Evid. 301 ("[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.").

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." DCL § 271(1). "Assets" is defined to mean property that is "not exempt from liability for [ ] debts." DCL § 270. To determine insolvency, courts apply a "balance sheet" test – *i.e.*, whether the debtor's debt exceeds his salable assets. *See, e.g., O'Toole v. Karnani (In re Trinsum Group, Inc.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011). Accordingly, a party is not insolvent just because he cannot pay his debts as they become due. *McCarty v. Nostrand Lumber Co.*, 232 A.D. 63, 65, 248 N.Y.S. 606, 607 (1st Dep't 1931). Further, "[t]he operative reference point for determining insolvency is the time at which the transfer took place" and "insolvency of the transferor . . . cannot be presumed from subsequent insolvency at a later point in time." *Trinsum Group*, 460 B.R. at 392; *Durland v. Crawford*, 172 A.D. 283, 285, 158 N.Y.S. 692, 693 (3d Dep't 1916) ("[T]he validity of a conveyance does not depend upon subsequent events").

Defendant argues that, even assuming lack of fair consideration, the Trustee's claim fails because the undisputed evidence shows Louise was not insolvent at the time of the Transfer or made insolvent thereby. ECF No. 11 at 5-7. The Debtor's affidavits, the affidavit of Ms. Tom, and certain exhibits, address the issue of the Debtor's solvency at the time of the Transfer. Louise states that her liabilities, which consisted entirely of credit card debt, ran to some $92,000. ECF No. 13 ¶ 13. To support her averment, she submits a document from Client Support Services, a debt resolution company she retained in 2007. ECF No. 13-16. This document provides the Debtor's balances on certain accounts as of July 16, 2007. *Id.* And Louise

states, "[t]hese were the only debts I had as of the date of the Transfer." ECF No. 13 ¶ 13.

In addition, Louise describes and documents assets of over $500,000, including $296,931.50 in an IBM Savings Account, $4,729.99 in an IBM Metro Account, and approximately $8,110.55 in a Ridgewood Savings Bank account. ECF Nos. 13 ¶ 11; 13-10; 13-11; 13-12; 13-13; 13-14; 13-15. She also states she owned over 30 pieces of Jewelry valued at $196,000 as of July 2007. ECF Nos. 13 ¶ 12; 22 ¶ 3. She explains:

> I met with Connie Tom of Connie Jewelry Co. last year for the purpose of obtaining a valuation of the over 30 pieces of jewelry that I owned as of . . . the date of the [T]ransfer . . . .
> I provided Connie Tom with the pictures, receipts, appraisals, and certificates of authenticity that are annexed to my prior Affidavit, dated January 28, 2013, as Exhibit "N". The pictures were taken by Arthur Abramov, the jeweler who had lent me approximately $55,000.00 in 2008. Some of the jewelry was given to him as collateral for the loans, while pieces were simply sold to him when I needed extra money. I did not in any way alter or enlarge the pictures that I provided Connie Tom nor did I in any way alter any of the receipts, past appraisals, or certificates of authenticity that I gave to her as well.

ECF No. 22 ¶¶ 2-3.[8] Ms. Tom avers she performed an appraisal and determined the jewelry had a fair market value of roughly $196,000, and Defendant submits Ms. Tom's appraisal as an exhibit. ECF No. 25 ¶¶ 2-4 & Exh A.

At the outset, the Trustee raises a valid legal principle. She argues that under 11 U.S.C. § 101(32), exempt assets must be excluded from an insolvency analysis. ECF No. 16 at 6-8. While Section 101(32) might not be particularly relevant, the result is the same under DCL §§ 270 & 271. Thus, at the very least, there is a genuine dispute of fact as to whether the nearly $300,000 held in the Debtor's IBM account should be excluded from the analysis of insolvency.

But even without this account, Defendant presents sufficient evidence of Louise's solvency. The $196,000 in jewelry alone far exceeds debts of roughly $92,000. The Trustee does

---

[8] Mr. Abramov is listed as a creditor with a claim of $50,000 on Schedule F. Case No. 11-46968 (ECF No. 1).

not submit contrary probative evidence. Her E.D.N.Y. LBR 7056-1 counterstatement merely states that she "disagrees" the Debtor was solvent. ECF No. 16-1 ¶¶ 33-34. The Trustee does not offer an alternative valuation, and instead argues, "[c]learly, valuation of . . . personal property is a genuine issue of material fact." ECF No. 16 at 8. She then attacks the quality of the evidence relating to the value of the jewelry. *Id.* at 8-9. She describes the documentary evidence as "blurry pictures of the Debtor's supposed assets, copies of hand written notes . . ., 'receipts' which were written by hand . . . and a very few 'appraisals'" and argues that "[t]here is no way to ascertain the qualifications of these 'appraisers' or if they had any interest in stating that the items in question were of high value." *Id.* at 9. The Trustee also attacks the evidence used by Defendant to establish the quantum of Louise's liabilities. *Id.* at 9-10.

Contrary to the Trustee's assertion, an issue of value is not a *per se* "genuine dispute" of material fact. Such a reading of the law would render meaningless the term "genuine." The Debtor's averments as to the value of the jewelry are evidence, even if Ms. Tom's valuation is disregarded. There is no genuine dispute of fact concerning value because the Trustee has not offered an alternative valuation or other evidence. The same holds for the Debtor's averments and documents concerning the quantum of her debt at the time of the Transfer. It is true that the Trustee presents evidence indicating (i) "the Debtor's employment at IBM had been over for many months and the Debtor had not obtained a new job at the time of the Transfer of the Premises" and (ii) "[s]he was merely receiving $405.00 per week in unemployment compensation." *Id.* at 9 (internal citations omitted). However, this evidence is insufficient to create a genuine dispute as to a material fact, because it does not address balance sheet insolvency. Similarly, the fact that several creditors in the Debtor's bankruptcy are listed on the document from Client Support Services (*id.* at 9-10) is not probative of the Debtor's solvency at the time of the Transfer.

In sum, Defendant rebutted the presumption of insolvency by presenting evidence that the Debtor's salable assets exceeded her liabilities, and the Trustee failed to present contrary probative evidence, such as a valuation or the Debtor's financial records. *Cf. Gordon v. Kinney (In re Gallagher)*, 417 B.R. 677, 683-84 (Bankr. W.D.N.Y. 2009). To be sure, the Trustee's unsupported nitpicking of the record is not adequate grounds to disregard Defendant's uncontradicted and admissible evidence. As insolvency is a required element of a claim under DCL § 273, Defendant's motion is granted as to Claim One.

A claim under DCL § 274 requires proof that at the time of the transfer the debtor was engaged or about to be engaged "in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital . . . ." DCL § 274. The DCL does not define "unreasonably small capital," but it has been construed to mean "a financial condition short of equitable insolvency[,]" where one "is technically solvent but doomed to fail." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 944 (S.D.N.Y. 1995) ("*MFS/Sun Life*") (internal quotation marks omitted).

Defendant argues that Section 274 does not apply because the Debtor was not engaged in *business* at the time of the Transfer. ECF No. 11 at 7-9. Defendant's argument has appeal based on the language of the statute. DCL § 274 (stating the transaction "is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction"). Moreover, the Trustee did not respond to Defendant's evidence concerning the Debtor's financial state of affairs with evidence that she "was doomed to fail," or anything close to that standard. As such, Defendant's motion is granted as to Claim Four, under DCL § 274.

To establish a claim under DCL § 275, plaintiff must prove the transferor intended or believed he would "incur debts beyond his ability to pay as they mature . . . ." DCL § 275. "Courts have interpreted 'intends or believes' as 'awareness by the transferor that, as result of the

conveyance, he will not be able to pay present and future debts.'" *Ostashko v. Ostashko*, 2002 WL 32068357, at *26 (E.D.N.Y. Dec. 12, 2002) (quoting *The Cadle Co. v. Lieberman,* 1998 WL 1674549, at *10 (E.D.N.Y. Sept. 11, 1998)), *aff'd sub nom. Ostashko v. Zuritta-Teks, Ltd.*, 79 Fed. Appx. 492 (2d Cir. 2003). Although actual intent need not be proven, DCL § 275 "requires proof of the debtor's subjective intent or belief that it will incur debts beyond its ability to pay as they mature." *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest. Inc.)*, 337 B.R. 495, 509 (Bankr. S.D.N.Y. 2006) (citing *MFS/Sun Life*, 910 F. Supp. at 943).

Defendant argues that the claim under DCL § 275 must be dismissed because Louise averred that she did not have the requisite mindset of incurring debt beyond her ability to pay and this statement is supported by her assets of over $500,000 as compared to liabilities of only $92,000. ECF No. 11 at 10. In her affidavit, Louise denies she believed she would incur debts beyond her ability to pay them. ECF No. 13 ¶ 16. To support this contention she notes her solvency at the time of the Transfer and her belief that she had only a bare legal interest in the Property. *Id.* ¶¶ 15-16.

The Trustee responds that the Debtor had the requisite intent, because "[t]here were at least six creditors owed monies here by the Debtor as of the time of the Transfer which were still owed money as of the" petition date, and that at the time of the Transfer and the time she filed her petition, the Debtor was unemployed. ECF No. 16 at 19. While the Trustee's argument is based on some evidence, that evidence is merely colorable. On this record, no reasonable trier of fact could find that Louise had the belief that she would incur debts beyond her ability to repay them.[9] As this is an essential element of a claim under DCL § 275, Defendant's motion is granted as to Claim Six. As to this claim, and each of the claims thus far discussed, the Court

---

[9] Although not dispositive, the Court notes that with respect to the claims under DCL §§ 274 and 275, Defendant's evidence is even more compelling if the exempt IBM account – from which Louise apparently made payments to creditors (*see* ECF No. 13 ¶ 17) – is taken into consideration.

rules in favor of Defendant because of the failure of the Trustee to produce probative evidence to support her claim, the result being that the evidence "is so one-sided that [Defendant] must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

## VI.

The final claim the Court considers is Claim Seven, based on actual fraud. DCL Section 276 states that "[e]very conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL § 276. Actual intent under DCL § 276 must be demonstrated by clear and convincing evidence, and this standard applies on summary judgment. *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004); *see Anderson*, 477 U.S. at 255 ("[C]lear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions"). A party's intent is often a question of fact which cannot be resolved on summary judgment, but where a trier of fact could not find the party acted with actual intent under a clear and convincing standard, summary judgment is warranted. *See, e.g.*, *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 401-02 (Bankr. S.D.N.Y. 2007) (collecting cases).

"To prove actual fraud under § 276, a creditor must show intent to [hinder, delay, or] defraud on the part of the transferor." *Sharp Int'l Corp.*, 403 F.3d at 56 (internal quotation marks and alterations omitted). "The existence of actual intent . . . is never presumed, and intent to defraud cannot be found based merely on suspicion, conjecture, or doubtful inference." *Lippe*, 249 F. Supp. 2d at 375 (internal quotation marks omitted). Because direct proof of fraudulent intent is difficult to obtain, a plaintiff may establish actual intent by reference to certain objective "badges of fraud." These badges are used as guideposts because they are often associated with actual fraud. They include:

> 1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance.

*Id.* "[T]he general chronology of the events and transactions under inquiry" may also be an indicator of fraud. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d Cir. 1983).

Defendant contends, "there is a complete lack of any direct proof that the Transfer was effectuated by Louise with the actual intent to hinder, delay, or defraud her present or future creditors." ECF No. 11 at 12. Defendant cites to the affidavit testimony describing the Chins' desire to transfer the Property to their eldest son in accordance with Chinese tradition. *Id.* Furthermore, Louise avers she did not intend to hinder, delay, or defraud present or future creditors, reiterates the nature of her interest in the Property, and states:

> In fact, I was so concerned about resolving my outstanding debts that I retained the services of Client Support Services, a debt resolution company. Beginning in October 2006 and through the date of the Transfer and beyond, I made nearly monthly payments to Client Support Services in order for them to [aid] in the settlement of my outstanding debts with my various creditors. . . . I was able to settle three of my debts as of the date of the Transfer through Client Support Services, although I needed to make various withdrawals from my IBM Savings Plan in order to . . . continue making the payments . . . [and] I continued making monthly payments . . . long after the Transfer, thus demonstrating that my intent was to come to terms with and resolve my . . . debts.

ECF No. 13 ¶ 17. And Defendant argues that apart from the intra-family nature of the Transfer, there is insufficient evidence concerning the other badges of fraud. ECF No. 11 at 12-18.

The Trustee notes that "intra-family transfers are scrutinized" more carefully than others (ECF No. 16 at 12), and claims "numerous badges of fraud are present" in this case:

> [T]he Debtor did not tell the Trustee, when questioned under oath at the 341 Meeting of Creditors, that she once owned or had her name appear on a deed of real property. The Debtor also denied,

> when questioned under oath at the 341 Meeting of Creditors, that the Transfer of the Premises had taken place. The Debtor gave away her interest in the Premises, a sizeable asset, to her brother the Defendant for absolutely no consideration at all. The Transfer was made to, for, and/or on behalf of her [b]rother the Defendant for no legal consideration. The Transfer was made by the Debtor at a time when she was indebted to many creditors and remained indebted to the same creditors at the time of the filing of her bankruptcy case.

*Id.* at 14-15. According to the Trustee, these badges "provide a more than sufficient basis for finding there could be actual fraudulent intent in the Transfer . . . ." *Id.* at 15.

Because the record does not contain any direct evidence that the Debtor had actual fraudulent intent, the Court will consider the evidence with respect to the badges of fraud. However, before proceeding it should be noted that:

> [T]he flip side of the[] badges of fraud is that their absence – or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control – would constitute evidence that there was no intent to defraud.

*Lippe*, 249 F. Supp. 2d at 375. Furthermore, the existence of a badge of fraud should be considered in the context of the case and any probative evidence of innocent intent. *Cf. In re Stanton*, 457 B.R. 80, 94 (Bankr. D. Nev. 2011) ("Because they are only evidence of the likelihood of fraud, badges of fraud are not given equal weight; and sometimes the circumstances indicate they should be given no weight at all.").

The Trustee has established a close relationship between the transferor and the transferee, and the Court agrees that intra-family transfers demand close attention. In addition, there is a genuine dispute of fact with respect to inadequacy of consideration. Although the Debtor claims to have only bare legal title, that issue cannot be resolved on this motion.

As already discussed in connection with DCL § 273, there is an absence of evidence of

the Debtor's insolvency at the time of the Transfer. There is also no assertion or evidence that the Debtor retained control of the Property. *See, e.g.*, *Danstan Props. v. Merex Corp.*, 2011 WL 135843, at *5 (S.D.N.Y. Jan. 7, 2011) (granting defendant's motion for summary judgment based on failure to provide evidence of retention of control, and noting this factor is often dispositive) (citing *Lippe*, 249 F. Supp. 2d at 384; *MFS/Sun Life*, 910 F. Supp. at 935-36). The Trustee also failed to establish the Transfer was conducted in secrecy. To the extent the Trustee is relying on the Debtor's testimony at the meeting of creditors to establish this badge, the Trustee's assertions are not evidence, and she has not submitted a transcript of the Debtor's testimony. Defendant's evidence concerning the Transfer is sufficient to negate the "questionable" nature of the Transfer, and it is the only probative evidence concerning that issue. Although the closing and transfer documentation record certain transactions, they are not sufficient to create a genuine dispute of material fact. For one thing, they do not conflict with Defendant's evidence explaining the context of the Transfer.

While an intra-family transfer for inadequate consideration is a worthy predicate for a claim of actual fraud, as the Second Circuit stated long ago, a court's ruling on summary judgment "is to be made on the record the parties have actually presented, not one potentially possible." *Madeirense do Brasil S/A v. Stulman-Emrick Lumber Co.*, 147 F.2d 399, 405 (2d Cir.), *cert. denied*, 325 U.S. 861 (1945). The Trustee's evidence consists of a handful of documents. She has established one badge of fraud, a genuine dispute as to another, and that is all. In terms of timing, the Debtor filed for bankruptcy over four years after the Transfer, which further cuts against an inference of fraudulent intent. The record also contains Defendant's abundant uncontradicted, non-circumstantial evidence as to lack of actual intent. The availability of badges of fraud as circumstantial evidence fulfills an important function, but the utility of a checklist can only go so far. The Trustee could have checked off the same badges of fraud at the time of the

filing of the complaint that she does now, after three months of discovery, and has offered little else in defense of this motion. Even crediting the Trustee with two badges of fraud, there simply is not enough probative evidence from which a reasonable trier of fact could find actual intent to hinder, delay, or defraud present or future creditors under the clear and convincing standard, or, for that matter, by a preponderance of the evidence. In short, the record does not even come close to raising a genuine dispute of fact as to actual intent under DCL § 276.

Thus, Defendant's motion must be granted as to Claim Seven. Claim Eight, under DCL § 276-a, is predicated upon a finding of actual fraud, and therefore also must be dismissed. Finally, as each of the avoidance claims under the DCL are dismissed, Claims Two, Three, and Five, seeking recovery of the monetary value of the Transfer under DCL § 278 and 11 U.S.C. § 550, are also dismissed.

## VII.

Accordingly, based on the foregoing, and the entire record, Defendant's motion for summary judgment is granted in its entirety and the above-captioned adversary proceeding is dismissed.


**SO ORDERED:**

Dated: Brooklyn, New York
        June 4, 2013

                                    s/Jerome Feller
                                    JEROME FELLER
                                    UNITED STATES BANKRUPTCY JUDGE